381 A.2d 873

**COMMONWEALTH of Pennsylvania**

v.

**Kenneth N. NICKOL, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 17, 1977.

Decided Dec. 23, 1977.

Michael J. Cefalo, Public Defender, Bruce S. Miller and Joseph F. Sklarosky, Asst. Public Defenders, for appellant.

Thomas J. Glenn, Jr., Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Appellant, Kenneth Nickol, was convicted on January 24, 1975, in a non-jury trial of murder of the second degree, robbery and carrying a firearm without a license. Following denial of post-trial motions, appellant was sentenced to life imprisonment on the murder charge and to terms of imprisonment of seven and one-half to fifteen years on the robbery count and one to two years on the firearms conviction (the two latter sentences to run consecutively). These appeals followed.[1] We affirm the judgments of sentence.

The record discloses that on April 4, 1974, the appellant, his brother David, William Angelo and Debra Busse Knorr arrived at a supermarket in Wilkes-Barre, Pennsylvania, in an automobile driven by Knorr. The vehicle stopped alongside the market and the driver kept the motor running while appellant entered the store. Once inside, Nickol proceeded to the manager's booth where he produced a gun and demanded that a paper bag be filled with money. The manager, Michael Grozio, observed these events and gave

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, 17 P.S. § 211.202(1) which places jurisdiction in this Court for the appeal from appellant's murder conviction. This Court has jurisdiction over the appeal from the related convictions by virtue of their transfer from the Superior Court to this Court.

chase to the appellant as he fled the store. Outside the store, Nickol ordered Grozio to stop, and fired a warning shot in the air; the manager, however, continued in pursuit. Nickol then turned and fired three or four shots at Grozio, fatally wounding him. Nickol rejoined his companions in the waiting car and the four drove to Hazelton, where they were apprehended by police the next morning. Nickol, however, escaped arrest and remained at large until his capture by FBI agents on July 9, 1974, in Fort Collins, Colorado. The appellant waived extradition and on July 17 was returned to Luzerne County where he was tried and convicted.

Three errors are alleged to have been made pretrial by the court of common pleas which require a new trial or a discharge. It is also claimed that judgment should be arrested on the weapons offense for insufficient evidence. We find no merit in any of these contentions.

(1) Appellant's first contention is that an oral statement given to police shortly after his arrest in Colorado should have been suppressed as the result of an unnecessary delay between arrest and arraignment. Pa.R.Crim.P. 130;[2] *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972).

The Luzerne County district attorney's office was notified of appellant's arrest on July 11, 1974, and undertook preparations to have Nickol returned. On July 15, three Wilkes-Barre police officers flew to Colorado, and on the following morning met with Nickol in the coffee room of the Lattimer County Colorado Prison. Nickol was advised of his constitutional rights, and waived them, subject to the condition that anything he said would not be written down or taped. Almost immediately after starting to talk, Nickol confessed to the robbery and the shooting of Grozio. The total time consumed in this meeting was about forty-five minutes. The police officers then left the prison, made travel arrange-

2. Rule 130 provides:
   "When a defendant has been arrested without a warrant in a court case, he shall be taken without unnecessary delay before the proper issuing authority where a complaint shall be filed against him and he shall be given an immediate preliminary arraignment."

ments and, on the following morning, returned with Nickol to Wilkes-Barre where they arrived on the evening of July 17, 1974. Appellant was then promptly taken before a magistrate, arraigned and thereafter jailed.

It is appellant's position that the delay of about 41 hours between his arraignment and the time police officers arrived in Fort Collins violates Rule 130. This claim borders on the frivolous. Under the circumstances of this case, the lapse of time, although considerable, cannot be said to have been unnecessary. See *Commonwealth v. Futch, supra.* Our case law recognizes instances of permissible delay between arrest and arraignment where such delay is the unavoidable result of administrative procedures. See *Commonwealth v. Whitson,* 461 Pa. 101, 334 A.2d 653 (1975); *Commonwealth v. Blagman,* 458 Pa. 431, 326 A.2d 296 (1974); *Commonwealth v. Futch, supra.* Here the unusual distance involved, together with the attendant problems of travel fatigue, coordination of booking arrangements, etc., satisfactorily justifies the delay. Furthermore, even were we to conclude that some of the time involved in taking Nickol to a magistrate was not necessary, there was clearly no nexus between the delay and the giving of the inculpatory statement. Nickol confessed almost immediately after meeting with the police; he may not now rely on a delay subsequent to the giving of that initial statement to support a *"Futch"* claim. See *Commonwealth v. Boone,* 467 Pa. 168, 354 A.2d 898 (1976); *Commonwealth v. Tervalon,* 463 Pa. 581, 345 A.2d 671 (1975); *Commonwealth v. Palmer,* 463 Pa. 26, 342 A.2d 387 (1975); *Commonwealth v. Davis,* 460 Pa. 644, 334 A.2d 275 (1975).

(2) Appellant next argues that his decision to waive a jury trial was involuntarily and unconstitutionally forced upon him. The argument is premised on the fact that whereas at the time of trial the Crimes Code [3] permitted the imposition of the death penalty, under certain circumstances, where trial was by jury, there was no provision for the death

3. The Act of Dec. 6, 1972, P.L. 1482, No. 334, amended Dec. 30, 1974, P.L. 1052, No. 345, 18 P.S. § 1311.

penalty in non-jury trials.[4] It is claimed, accordingly, that the appellant's Sixth Amendment right to trial by jury was impermissibly chilled. We have previously considered and rejected such an argument in *Commonwealth v. Bhillips a/k/a Gergel*, 475 Pa. 427, 380 A.2d 1210 (1977). Our decision in *Bhillips* is controlling here.

■ (3) As a third assignment of error, Nickol claims that the lower court improperly granted a Commonwealth petition for an extension of time within which to commence trial, and that in consequence, trial was not commenced within 270 days of the filing of the complaint, as then required by Pa.R.Crim.P. 1100.[5] He therefore claims that he is entitled to discharge. See paragraph (b) of Rule 1100. It is not necessary, however, to consider the propriety of the continuance, for the record verifies that trial was commenced within the time allowed by Rule 1100. Paragraph (d) of that rule provides that periods of delay due to the absence of the defendant shall be excluded from computation of the 270 days. In the present case, appellant was a fugitive from justice for 95 days following the issuance of the complaint on April 5, 1974; it was therefore only necessary that trial commence within 270 days plus 95 days, or by April 5, 1975. As trial commenced on January 20, 1975, there was no Rule 1100 violation.

■ (4) Finally, Nickol alleges that the lower court erred in failing to grant his motion in arrest of judgment with

4. Paragraph (e) of Sec. 1311 of the Crimes Code provided that in such cases, and in cases of pleas of guilty, the court should impose sentence in accordance with Rules of Criminal Procedure as promulgated by the Supreme Court of Pennsylvania. Although such rules were later promulgated, see Pa.R.Crim.P. 351, *et seq.*, they had not become effective at the time of trial in the instant case.

5. Although Rule 1100 now mandates that all trials be commenced within 180 days of the filing of the complaint, the former 270 day period was applicable at the time of appellant's trial. The record shows that the complaint in the instant case was filed on April 5, 1974. Thus, absent any continuances or periods of exclusion, trial should have commenced on or before December 31, 1974. The Commonwealth petitioned for the challenged extension on December 10, 1974, and trial eventually commenced on January 20, 1975, within the extended period.

respect to the charge of carrying a firearm without a license.[6] The argument is that the Commonwealth failed to establish that Nickol *concealed* the firearm as is required by § 6106, n. 6, *supra*.[7] At trial, the prosecution called Debra Busse Knorr, the driver of the get-away vehicle. She testified that she saw no gun in the possession of Nickol either at the time he left the vehicle to enter the supermarket or at the time he reentered the automobile. Other testimony elicited at trial substantiates that Nickol did possess and use a firearm in the interim. The issue of whether the gun which appellant used might have been concealed on his person when he entered the supermarket was a question for the finder-of-fact. We believe the evidence in the instant case was sufficient to give rise to a permissible inference that Nickol did conceal the weapon. See *Commonwealth v. Pressley*, 433 Pa. 163, 249 A.2d 345 (1969); *Commonwealth v. Horshaw*, 237 Pa.Super. 76, 346 A.2d 340 (1975).

The judgments of sentence are affirmed.

ROBERTS, J., filed a dissenting opinion in which MANDERINO, J., joins.

ROBERTS, Justice, dissenting.

Appellant Kenneth Nickol was tried in January, 1975, for murder. At the time of appellant's trial, 18 Pa.C.S.A. § 1311 (Supp.1977) provided that a jury could impose a sentence of death for first degree murder, but that a judge sitting without a jury could impose the same sentence only pursuant to rules promulgated by this Court. At the time of trial,

6. Section 6106 of the Uniform Firearms Act, Act of December 6, 1972, P.L. 1482, No. 334, § 1, as amended, 18 Pa.C.S.A. § 6106 provides in relevant part:

"(a) Offense defined.—No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as provided in this subchapter."

7. There is no claim that the prosecution failed to establish the absence of a license. John Lowe of the Wilkes-Barre police force testified that no gun permit was ever issued to Kenneth Nickol. Compare *Commonwealth v. McNeil*, 461 Pa. 709, 337 A.2d 840 (1975).

this Court had not promulgated such rules, so that no judge sitting without a jury could impose a sentence of death upon appellant. Appellant chose to be tried by a judge sitting without a jury because, he asserts, he feared the potential sentence of death accompanying the exercise of his constitutional right to a trial by jury. The majority concludes that appellant's "waiver of the right to trial by jury was not unconstitutionally coerced." I dissent.

This case presents the same issue as *Commonwealth v. Bhillips a/k/a Gergel*, 475 Pa. 427, 380 A.2d 1210 (1977) (Roberts, J., dissenting, joined by Manderino, J.). Both this case and *Bhillips* are indistinguishable from *United States v. Jackson*, 390 U.S. 570, 583, 88 S.Ct. 1209, 1217, 20 L.Ed.2d 138 (1968). In *Jackson*, the United States Supreme Court held that a sentencing scheme which allowed capital punishment following a jury trial but not following a bench trial is unconstitutional because it "impose[s] an impermissible burden upon the assertion of a constitutional right," the right to a trial by jury. Id.

"When . . . a defendant is unwilling to admit his guilt and exercises his undoubted right to put the Commonwealth to its proof, there can be no justification for holding as 'voluntary' the waiver of the right to trial by jury when that waiver was admittedly compelled by a patently unconstitutional sentencing scheme. The decision of the majority reflects an insensitive regard for the basic principle that the waiver of a constitutional right must be voluntary, and not the result of impermissible coercion."

*Commonwealth v. Bhillips*, supra, 475 Pa. at 437, 380 A.2d at 1215 (Roberts, J., dissenting). For these and the other reasons stated in my dissenting opinion in *Bhillips*, I believe *United States v. Jackson* compels us to reverse the judgment against appellant and grant him a new trial, and must dissent. I therefore do not reach the other issues addressed by the majority.

MANDERINO, J., joins in this dissenting opinion.