464 A.2d 1307

**COMMONWEALTH of Pennsylvania**

v.

**Charles SIERS, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 9, 1982.

Filed Aug. 19, 1983.

Petition for Allowance of Appeal Denied Jan. 20, 1984.

John J. Poserina, Philadelphia, for appellant.

Richard P. Myers, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before BROSKY, ROWLEY and MONTGOMERY, JJ.

ROWLEY, Judge:

This is a direct appeal from an order denying appellant's post-sentence petition to withdraw his pleas of guilty to three counts of robbery [1] and one count of knowingly or

---

1. Appellant pled guilty to three separate bank robberies. During one of the robberies, appellant was photographed by bank security equipment. A police officer recognized appellant from this photograph and arrested him. Appellant was later identified by tellers from the three banks at a station house line-up.

intentionally possessing a controlled substance. Appellant pled guilty on July 28, 1978, and was sentenced on September 19, 1978, to concurrent terms of imprisonment of six to *twenty* years on each robbery charge. Appellant's sentence on the possession count was suspended. Thereafter, appellant filed a motion to withdraw his guilty pleas along with a petition to reconsider his sentences on the robbery charges. Upon reconsideration, appellant's sentences were modified and concurrent terms of imprisonment of six to *twelve* years were imposed. Appellant's petition to withdraw his guilty pleas, however, was denied. This direct appeal followed.

██ In considering appellant's appeal, we emphasize that there is an important distinction between pre-sentencing and post-sentencing attempts to withdraw a guilty plea. *Commonwealth v. Shaffer,* 498 Pa. 342, 446 A.2d 591 (1982); *Commonwealth v. Herberg,* 306 Pa.Super. 245, 452 A.2d 536 (1982). "[A] showing of prejudice on the order of manifest injustice" is required before withdrawal of a guilty plea on a post-sentence petition can be justified. *Commonwealth v. Starr,* 450 Pa. 485, 490, 301 A.2d 592, 595 (1973). This substantial burden of proof is imposed because of the recognition that a plea and its subsequent withdrawal may be used by the accused as a sentence-testing device. *Id.,* 450 Pa. at 489, 301 A.2d at 594. Consequently, before a post-sentence petition to withdraw a guilty plea will be granted under the "manifest injustice" standard, some demonstration must be made that the plea was involuntary. *Commonwealth v. Bhillips,* 475 Pa. 427, 380 A.2d 1210 (1977).

Appellant states the issues on appeal as follows [2]:

I. Should defendant [sic] be permitted to withdraw his guilty plea[s]?

**2.** In the body of appellant's brief, an additional argument is made that one of the factors which rendered appellant's plea involuntary, in addition to those outlined below, was the Commonwealth's demand for a jury trial. Appellant argues that the possibility of a non-jury trial was foreclosed to him by virtue of the Commonwealth's demand, and that, as a consequence, the only alternatives open to him were

II. Is the system of assigning Judges to hear criminal cases in Philadelphia, unconstitutional in its application, by coercing defendants to Plea [sic] Guilty?

III. Did the manner in which the Defender Association of Philadelphia assigns [sic] various attorneys to represent appellant, prevent him from receiving adequate representation[?]

IV. Did the trial courts [sic] refusal to allow appellant to recover the sum of $500.00 which was seized from him prevent him from securing counsel of his choice?

The first specific contention of error which the appellant raises is that the system of assigning judges to hear criminal cases in the Court of Common Pleas of Philadelphia County is unconstitutional in that it coerces criminal defendants to engage in plea bargaining or to plead guilty in the hope of receiving a more lenient sentencing judge than if he goes to trial before a jury. In Philadelphia County, there

either to plead guilty or to proceed with a jury trial. Appellant maintains that, because his alternatives were thus circumscribed, he was "mentally" coerced into pleading guilty in order to avoid the heavier sentence he anticipated would be forthcoming subsequent to a jury trial. Recently in *Commonwealth v. Sorrell*, 500 Pa. 355, 456 A.2d 1326 (1982), our Supreme Court held that the Commonwealth has no right to a jury trial and that 42 Pa.C.S. § 5104(c) which provided for such a right was unconstitutional. The Supreme Court in *Sorrell* further held that a trial court's denial of an appellant's request for a non-jury trial *solely* in reliance on 42 Pa.C.S. § 5104(c) would be erroneous and in contradiction of Pa.R.Crim.P. 1101. In this case, all the events subject to review took place prior to the holding in *Sorrell*. However, even if *Sorrell* were applicable, appellant does not aver that he ever made a request for a non-jury trial which was later denied by the trial court on the basis of 42 Pa.C.S. § 5104(c), or for any other reason. Appellant's only argument is that he *believed* that the possibility of a non-jury trial was foreclosed to him by virtue of the Commonwealth's demand for a jury trial, and that that belief caused him to plead guilty in order to avoid a more stringent sanction. We find appellant's argument to be without merit. In essence, appellant is averring that he pled guilty in order to avoid a possibly heavier sentence. As we note in our discussion, *infra*, the desire to limit one's penalty is not a ground on which to base an involuntary guilty plea claim. *Commonwealth v. Bhillips*, 475 Pa. 427, 380 A.2d 1210 (1977).

are approximately fifteen (15) judges who are assigned to the division which hears major criminal cases. Of the fifteen (15) judges thus assigned, three (3) or four (4) hear non-jury or waiver cases and guilty pleas, while the other twelve (12) or eleven (11) are assigned to the task of hearing jury trials. Those judges who hear only non-jury or waiver cases and pleas are referred to, in the common vernacular of Philadelphia County, as "waiver" judges, while those judges who hear only jury trials are referred to, quite logically, as "jury" judges. Whether a judge in the major criminal division of Philadelphia County receives the designation of "waiver" judge or "jury" judge is not determined by any administrative edict, but rather results from that particular judge's reputation within the local bar and the criminal community. Criminal defendants and defense attorneys occasionally refuse to waive jury trials or present pleas in front of certain judges who have the reputation of giving "stiff" sentences. As a consequence, those judges reputed to be "tough" judges are forced into the role of "jury" judges, while the judges with more "lenient" sentencing reputations become, by attrition, "waiver" judges.

Although these roles of "waiver" judge and "jury" judge are not administratively mandated, the judges of the criminal division of Philadelphia County have adapted the case assignment system to accommodate for their existence in order to insure an effective caseflow. Therefore, if a case is originally sent to a "waiver" judge as a non-jury trial or as a guilty plea, and the defendant involved subsequently decides to exercise his/her right to a jury trial, the case will be returned to the criminal case calendar room for reassignment to one of the "jury" judges. This is done in order not to disrupt the schedule of the "waiver" judge which, typically, will already be filled with other non-jury trials or guilty pleas. Appellant contends that it is this practice of reassignment adopted by the judges of the criminal division of Philadelphia County which coerces criminal defendants to engage in plea bargaining or to plead guilty.

Although plea bargaining has been common practice in criminal cases for many decades, only in relatively recent times has it gained respectability in the criminal justice system, and has now become so commonplace that the overwhelming majority of criminal cases are disposed of in this manner. It is clear that guilty pleas entered pursuant to bargaining must be entirely voluntary and that it is a violation of due process where such a plea is obtained by coercion or by deception or by a trick. Annot., 10 A.L.R.4th 689, 692 (1981) (citations omitted).

■ Nevertheless, the United States Supreme Court has stated that there is no *per se* rule against encouraging guilty pleas or engaging in plea bargaining. *Corbitt v. New Jersey*, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978). In addition, judges are not forbidden to extend a proper degree of leniency in return for guilty pleas or to make due allowance for plea bargains in sentencing decisions. *Id.* Our society accepts these mechanisms as beneficial to the implementation of the criminal justice system. Therefore, the fact that the criminal case assignment process employed by the judges of the criminal division of Philadelphia County *may* encourage criminal defendants to plead guilty, does not, of itself, make such encouragement an undue burden on the exercise of their constitutional right to a jury trial so as to invalidate their guilty pleas. *But see* Abrams, *Systemic Coercion: Unconstitutional Conditions In the Criminal Law*, 72 J.CRIM.L. 128 (1981); Folberg, *The "Bargained For" Guilty Plea—An Evaluation*, 4 CRIM.L.BULL. 201 (1968). However, while inadvertent encouragement may be permissible, deliberate participation by the judiciary in the plea bargaining process has been held to be improper in Pennsylvania. *Commonwealth v. Evans*, 434 Pa. 52, 252 A.2d 689 (1969); *Compare People v. Fox*, 38 Ill.App.3d 257, 345 N.E.2d 139 (1975). Even so, before a plea bargain or a guilty plea may be categorized as involuntary by virtue of improper judicial conduct, the participation by the judiciary must be found to be "active" in nature. *Commonwealth v. Palmer*, 463 Pa. 26, 342 A.2d

387 (1975); *Commonwealth v. Sanutti,* 454 Pa. 344, 312 A.2d 42 (1973).

■ In this case, there is no evidence of record, nor does appellant advance such a claim, that the case assignment system employed by the criminal division of Philadelphia County was adopted with the avowed purpose of soliciting plea bargains or guilty pleas from criminal defendants. Nor is there a claim that the so-called "waiver" or "jury" judges actively seek out their respective designations with the deliberate purpose of coercing defendants in the criminal system of Philadelphia County to plea bargain or to enter pleas of guilty. On the contrary, such differences as do exist between these jurists, exist as a result of the disparity in the individual beliefs and principles held by them concerning the purpose of the sentencing process in our criminal justice system. The labels they receive are merely a reflection of their honestly and sincerely held sentencing philosophies. Consequently, lacking any evidence of "active" participation by the judiciary in the plea bargaining process in Philadelphia County, we do not find the mandate of *Evans, supra,* to be applicable.[3]

■ Disappointed expectations alone do not vitiate guilty pleas, *Commonwealth v. Sanutti, supra.* Likewise, a desire to limit one's penalty by pleading guilty is not a ground on which to base a claim of involuntariness. *Commonwealth v. Bhillips, supra.* Because appellant has failed to demonstrate in what manner his plea was not voluntarily given, his first contention of error must fail.

■ Appellant's second specific contention of error is that he was deprived of adequate representation by the

---

**3.** Appellant makes no contention that the judges of Philadelphia County impose illegal sentences or sentences which violate the statutory maximum. He concedes that the sentences which have been imposed are permissible, and that the judges of Philadelphia County have not abused their discretion in the past when sentencing. What effect our recently enacted sentencing guidelines would have on appellant's arguments is not clear. It is questionable, however, under the new sentencing guidelines whether the categories of "tough" and "lenient" sentencing judges will remain viable.

manner in which the public defender's office of Philadelphia County assigned various attorneys to represent him during the course of his case. Appellant does not argue that any particular attorney assigned to his case from the public defender's office was ineffective or provided inadequate counsel, rather he objects in a general fashion to the method employed by the public defender's office of Philadelphia County of assigning different attorneys to handle the various aspects of a criminal defendant's case. It is well acknowledged in our law that, while a criminal defendant does have a right to counsel, he does not have the right to select a particular attorney to handle his case. *Commonwealth v. Coleman*, 482 Pa. 581, 394 A.2d 474 (1978). The test is whether adequate representation was provided the appellant. *See Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). The record in the case at hand is devoid of any evidence showing less than adequate representation at any stage of appellant's case. Appellant's second issue of error is, therefore, without merit.

■ Appellant's third contention of error is that the trial court's refusal to allow him to recover the $500.00 seized from him at the time of his arrest prevented him from securing private counsel of his choice. Assuming that appellant could have found an attorney willing to represent him on these charges for the sum of $500.00, appellant filed no motion under Pa.R.Crim.P. 324 for the return of his property. Even if appellant had filed such a motion, however, the evidence on the record supports a finding that the money was derivative contraband. *See Commonwealth v. Landy*, 240 Pa.Super. 458, 362 A.2d 999 (1976). Appellant's final issue of error is likewise without merit.

Judgment of sentence affirmed.

BROSKY, J., files a concurring opinion.

BROSKY, Judge, concurring:

I join the majority opinion and write to comment on the second issue.

This issue raised the question whether appellant was afforded ineffective assistance of counsel by virtue of the handling of different phases of his cases by different Public Defenders. I repeat that I join the majority's treatment of this issue. Nonetheless, it raises a troubling question.

Since appellant does not allege any specific instances of ineffectiveness on the part of any of the individual counsel who represented him, his challenge is to the system *per se* of assigning counsel to handle particular phases of a case rather than handling a case from beginning to end. While a certain degree of facility would develop, in such a horizontal assignment of counsel's duties,[1] some disadvantages are also apparent. Chief among these disadvantages is a lack of in-depth knowledge of the facts of any given case counsel is handling a phase of. A vertical assignment of cases would obviously increase counsel's familiarity with the facts of a case and consequently greatly aid counsel's handling of a case.

Whether this particular disadvantage is offset by the advantage of specialized expertise is not presented to us in a manner which would allow us to resolve it.[2] Appellant did not present to the court below, (thus creating a record for our review), data relating to the general quality of representation resulting from the system he challenges. Such data might have taken a variety of forms, including—but not limited to—studies in criminology or jurisprudence on the subject, testimony from qualified experts and case law from other jurisdictions. None of this was presented to the court below or is included in the record before us.[3] Consequently, we are unable to treat the question in its broader context.

**1.** One particular phase where this arrangement could result in specialized expertise would be suppression hearings.

**2.** Nor, more importantly,. was it so presented to the court below. There are, no doubt, a number of other advantages and disadvantages of the horizontal handling of cases. They are not even argued.

**3.** If the system itself were found on the basis of such a record to generally provide ineffective assistance of counsel, then it would follow that cases under the system would, at the least, have a presumption of ineffective assistance of counsel.

I write only to bring attention to what may prove to be a serious challenge to the means of providing indigent defendants with counsel.

*Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), guaranteed, as a federal constitutional right, the assistance of counsel in state-prosecuted criminal cases. It remains for a future case to determine whether the challenged counsel assignment procedure mutes *Gideon's* trumpet.