**SIERS, Charles E., Appellant,**

v.

**RYAN, Joseph M. and the Attorney General of the State of Pennsylvania.**

No. 84–1521.

United States Court of Appeals, Third Circuit.

Argued June 10, 1985.

Decided Sept. 20, 1985.

Mary McNeill Zell (argued), Philadelphia, Pa., for appellant.

Ann C. Lebowitz (argued), Asst. Dist. Atty., Jane Cutler Greenspan, Chief, Superior Court Appeals, Gaele McLaughlin Barthold, Chief, Prosecution Appeals, Eric B. Henson, Deputy Dist. Atty. for Law, Edward G. Rendell, Dist. Atty., Philadelphia County, Philadelphia, Pa., for appellee.

Before HIGGINBOTHAM and BECKER, Circuit Judges, and COHILL, District Judge.*

---

* Honorable Maurice B. Cohill, Jr., United States District Judge for the Western District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal from the dismissal of a *pro se* habeas corpus petition for failure to allege facts which, if proved, would establish a constitutional violation as required by 28 U.S.C. § 2254(a) (1982).[1] For the reasons that follow, we will affirm the judgment of the district court.

### I.

Petitioner-appellant, Charles E. Siers ("Siers") was arrested and charged with the commission of three bank robberies and, following a preliminary hearing, was bound over for trial in the Court of Common Pleas of Philadelphia County. Siers did not go to trial but instead pleaded guilty to three counts of robbery and was sentenced to serve concurrent terms of six to twenty years incarceration. Subsequently, Siers moved to withdraw his guilty plea. Appendix ("App.") at 46a–52a. He alleged that he pleaded guilty as a result of, *inter alia*, ineffective assistance of counsel because there was no continuity of counsel assigned by the Defender Association of Philadelphia to represent him. He further alleged psychological duress which he attributed to having been warned by the Public Defender that the Commonwealth demanded a jury trial, that the judges assigned to criminal jury trials were "tough" sentencers, and that therefore if he would plead guilty, he would get a more lenient sentence.

The Court of Common Pleas conducted an evidentiary hearing and denied Siers' motion to withdraw his guilty plea. App. at 53a–143a, 144a–168a. Siers' sentence was later affirmed by the Superior Court of Pennsylvania, *Commonwealth v. Siers*, 318 Pa.Super. 215, 464 A.2d 1307 (1983), after which Siers filed a petition for allowance of appeal to the Supreme Court of Pennsylvania. The Supreme Court of Pennsylvania denied allocatur. App. at 166a.

Siers then submitted this *pro se* petition for a writ of habeas corpus to the United States District Court for the Eastern District of Pennsylvania. App. at 167a–172a. Siers asserted that his confinement was unconstitutional because of the method used by the Philadelphia Court of Common Pleas to assign cases, the lack of continuity in representation by the Public Defenders Association, confiscation of property, and the Commonwealth's "illegal" demand for a jury trial. App. at 170a, 171a. The district court dismissed the petition because it failed "to allege facts which, if proved, would render petitioner's confinement unconstitutional." App. at 177a. This appeal followed.

Siers presents the following three issues for our consideration:

(1) whether Siers should have been permitted to withdraw his guilty plea on the theory that it was entered because the method of assigning cases in Philadelphia had "chilled his right to trial before a jury of his peers";[2]

(2) whether Siers was denied his constitutional right to effective assistance

---

1. In relevant part, § 2254(a) provides that a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

2. Siers asserts that he was deprived of his "constitutional right" to elect between a trial jury and a bench trial. However, this is not a constitutional violation because there is no constitutional right to a non-jury trial. *Singer v. United States*, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). As the *Singer* court states:

[a] defendant's only constitutional right concerning the method of trial is to an impartial trial by jury. We find no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury—the very thing that the Constitution guarantees him.

*Singer*, 380 U.S. at 36, 85 S.Ct. at 790. *See also United States v. Jackson*, 390 U.S. 570, 584, 88 S.Ct. 1209, 1217, 20 L.Ed.2d 138 (1968); *Smith v. Zimmerman*, 768 F.2d 69, 71 (3d Cir.1985).

of counsel and equal protection under the law by the manner in which the Public Defenders handled his case; and

(3) whether the district court erred in dismissing his petition without a hearing on the ground that it failed to allege a constitutional violation.

## II.

Siers pleaded guilty to a February 22, 1978 robbery at a Beneficial Bank branch, and to March 3 and March 10 robberies of two different Girard Bank branches. In each of the crimes, the robber handed the bank teller a threatening hold-up note and a brown paper bag. The note instructed the tellers to place their large bills in the paper bag. The note also contained a thinly veiled threat warning the tellers that they were being watched and that they should not attempt to sound their alarms. Despite this threat, one of the tellers at one bank, Eileen Blohm, successfully activated a camera which photographed Siers during the March 3 incident.

This photograph, which was later marked and introduced into evidence at guilty plea proceedings, was enlarged and placed on a police wanted poster. Siers was arrested inside a restaurant at 1:00 a.m. on March 11, 1978 when the arresting officer, Lt. James Gallagher, recognized him from this police poster. Each of the three bank tellers positively identified Siers at a counseled post-arrest line-up on the morning of his arrest, and again at the preliminary hearing on April 18, 1978. The first teller, Heidi Lagansky, unequivocally identified Siers as the man who robbed her station at Beneficial Bank on February 2, 1978. On cross-examination, Ms. Lagansky testified that defendant stood at her window for three to four minutes during the robbery. The other two tellers, Eileen Blohm and Elizabeth Foell, also identified Siers without any hesitation. Blohm and Foell estimated that Siers stood at their respective

Girard Bank windows for at least five minutes during the incidents of March 3 and March 10. Based on the preliminary hearing testimony of these witnesses, Siers was held for trial on three counts each of robbery, theft, possession of an instrument of crime and terroristic threats.

Faced with this evidence, and the possibility of a substantial prison sentence if convicted on these charges,[3] Siers and his counsel gave consideration to a means to minimize his sentence through a "non-trial disposition." On May 12, 1978, Siers' case was listed in the calendar room before Judge Samuel Smith. Judge Smith granted Siers' request for continuance and the court docket specifically notes "possible non-trial disposition." At the next calendar listing on May 18, 1978, Siers, after conferring with counsel, decided to plead guilty provided the case could be listed before a favorable judge. The case was then sent to Judge Klein, whom Siers believed to have a reputation for leniency.

On July 28, 1978, Siers, a thirty-six year old high school graduate, pleaded guilty before Judge Klein. Siers evinced an understanding of his rights, satisfaction with the lawyer, and a desire to plead guilty of his own volition, before accepting Siers' guilty plea to three counts of robbery and one count of possession of narcotic contraband, Judge Klein conducted a comprehensive on-the-record colloquy. The prosecutor then established a factual basis for the plea, and Siers admitted the accuracy of these facts. Siers was specifically advised of the possible consequences of his plea, and the rights he was giving up by nature of its entry. Judge Klein accepted Siers' guilty plea and imposed a sentence of six to twenty years.

Dissatisfied with this sentence, Siers, through his trial counsel, the Defender Association, filed a written petition to withdraw his plea on October 5, 1978.

---

**3.** The maximum sentence for robbery is ten to twenty years. 18 Pa.C.S.A. § 1103 and § 3701(b). Defendant therefore faced a possible sentence of thirty to sixty years imprisonment on the robbery charges alone.

New counsel was subsequently appointed, and an evidentiary hearing was scheduled before Judge Klein on December 7, 1978. Prior to the evidentiary hearing, new counsel filed an amended petition alleging, *inter alia*, that Siers' guilty plea was induced by the "psychological duress" of the Philadelphia method of case assignment. Siers testified at the evidentiary hearing that he agreed to plead guilty because Judge Klein was purportedly a lenient judge, and because he did not want to risk being "warehoused" by a tough judge, such as Judge (now Pennsylvania Supreme Court Justice) McDermott. Despite his previous assurances of voluntariness, Siers testified at the evidentiary hearing that he had not been "pleased" with the plea proceedings, and that he had wished instead to have separate jury trials on each of the robbery counts. Siers' post sentencing preference for jury trials in these cases was based on his belief that "anything can happen with the jury."

Assistant Public Defender, Richard Di-Maio, was called as a defense witness. Di-Maio, who was Assistant Chief of the Defender's Major Trial division, testified that he represented Siers before calendar Judge Smith on May 18, 1978. DiMaio stated that he reviewed the case before talking to Siers, that he knew the Commonwealth's evidence was overwhelming because he had access to the police report and wanted poster photograph, and that he assured his client that the Defender would do everything necessary to fight the case in court, but there was a great chance of conviction on these charges, and if convicted, Siers faced a potential prison sentence in excess of twenty years. DiMaio testified that he feared such a heavy sentence following conviction in a jury trial not only because of the personalities and sentencing matters of particular judges, but also because of the nature and strength of the Commonwealth's case as well as Siers' own criminal record. For these reasons, DiMaio told Siers that in his best professional judgment the best defense strategy was minimization of sentence by means of a guilty plea before a favorable judge. Siers, by his own admission at the plea colloquy, made the independent decision to follow his counsel's advice and enter a guilty plea. Siers' petition to withdraw his pleas was denied by Judge Klein on November 28, 1979. Siers appealed to the Pennsylvania Superior Court, which denied relief, finding that the plea was not coerced.[4]

### III.

Siers first argues that he should have been permitted to withdraw his guilty plea because it was not the product of a voluntary and intelligent choice. In essence Siers contends that guilty plea was coerced by the combination of two factors: the assignment system in the Philadelphia courts and the Commonwealth's ability at

---

**4.** The Superior Court discussed the Philadelphia case assignment system, and found it non-coercive:

In Philadelphia County, there are approximately fifteen (15) judges who are assigned to the division which hears major criminal cases. Of the fifteen (15) judges thus assigned, three (3) or four (4) hear non-jury or waiver cases and guilty pleas, while the other twelve (12) or eleven (11) are assigned to the task of hearing jury trials. Those judges who hear only non-jury or waiver cases and pleas are referred to, in the common vernacular of Philadelphia County, as "waiver" judges, while those judges who hear only jury trials are referred to, quite logically, as "jury" judges. Whether a judge in the major criminal division of Philadelphia County receives the designation of "waiver" judge or "jury" judge is not determined by any administrative edict, but rather results from that particular judge's reputation within the local bar and the criminal community. Criminal defendants and defense attorneys occasionally refuse to waive jury trials or present pleas in front of certain judges who have the reputation of giving "stiff" sentences. As a consequence, those judges reputed to be "tough" judges are forced into the role of "jury" judges, while the judges with more "lenient" sentencing reputations become, by attrition, "waiver" judges.

*Commonwealth v. Siers*, 318 Pa.Super. at 219–20, 464 A.2d at 1310.

Though we agree with the Superior Court's findings, we reject any implication that it was the collective action of the *bar* that gave rise to the assignment system, inasmuch as the system was institutionalized by action of the court itself in making case assignments.

the time to demand a jury trial. In Siers' submission he was relegated, in essence, to a choice between a jury trial before a heavy sentencing jury judge and a guilty plea before a lenient sentencing waiver judge.

Siers' constitutional claim fails for two basic (and related) reasons which are reflected in two lines of Supreme Court cases. First, the precedents compel the conclusion that Siers has not made out a habeas claim that his guilty plea was involuntary, as it was based upon competent legal advice and made with full knowledge of the consequences of waiver of fifth and sixth amendment rights. Second, the incentives offered by the Commonwealth to induce the guilty plea clearly pass constitutional muster.

### A.

■ It is crystal clear that a prisoner may attack only the voluntary and intelligent character of the guilty plea. *See, e.g., Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). As the Supreme Court stated:

> The focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity.... When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann [McMann v. Richard-*

*son,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970) (guilty plea is not open to attack if the "advice was within the range of competence demanded of attorneys in criminal cases") ]. *Tollett,* 411 U.S. at 266–67, 93 S.Ct. at 1607–08.

■ Here, the state court record abundantly demonstrates that Siers pleaded guilty relying on competent legal advice and with full knowledge of the consequences of his waiver of fifth and sixth amendment rights. The state court's conclusion that Siers' guilty plea was voluntary is entitled to a presumption of correctness on our part. 28 U.S.C. § 2254(d). *Cf. Patterson v. Cuyler,* 729 F.2d 925, 932 (3d Cir.1984) (state court's conclusion that defendant's waiver of *Miranda* rights was voluntary was entitled to presumption of correctness).

■ Siers' decision to plead guilty was appropriately motivated by his understandable desire to minimize his sentence in the face of compelling Commonwealth evidence. He does not claim that his guilty plea was not made intelligently, or that counsel was ineffective for recommending a guilty plea. A guilty plea which represents the defendant's intelligent choice among available alternatives competently presented to him by his counsel is not vulnerable to constitutional attack.[5] Accordingly, having been fully advised of his rights and the consequences of his plea, Siers has stated no basis for permitting him to withdraw his solemn admission of guilt.

### B.

■ Even assuming that Siers' plea was in fact induced by the Philadelphia judicial assignment system and the prosecutor's

---

5. *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970); *see also Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970) (upholding guilty plea based on counsel's advice that defendant's confession was admissible); *Brady v. United States,* 397 U.S. 742, 749–55, 90 S.Ct. 1463, 1469–72, 25 L.Ed.2d 747 (1970) (upholding guilty plea entered by one fully aware of the conse-

quences); *McMann v. Richardson,* 397 U.S. at 770–71, 90 S.Ct. at 1448 (defendant bound by plea unless he can prove serious derelictions on the part of his counsel). *Cf. United States ex rel. Healey v. Cannon,* 553 F.2d 1052 (7th Cir.), *cert. denied,* 434 U.S. 874, 98 S.Ct. 221, 54 L.Ed.2d 153 (1977) (guilty plea based on plainly erroneous advice is not an informed choice).

jury demand, Siers nevertheless fails to state a constitutional claim. There is no *per se* constitutional impediment to encouraging guilty pleas. *Corbitt v. New Jersey*, 439 U.S. 212, 218–23, 99 S.Ct. 492, 497–99, 58 L.Ed.2d 466 (1978); *Bordenkircher v. Hayes*, 434 U.S. 357, 361–64, 98 S.Ct. 663, 666–68, 54 L.Ed.2d 604 (1978); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

Siers, relying on the analysis of *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) argues that he is entitled to constitutional relief because the "inevitable effect" of Philadelphia's judicial assignment system and the prosecutor's demand for a jury trial is "to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial." *Jackson*, 390 U.S. at 581, 88 S.Ct. at 1216. The Supreme Court, however, in *Brady*, has expressly held *Jackson* inapplicable to a defendant's attempt to withdraw his guilty plea.

*Jackson* invalidated the death penalty provision of the Federal Kidnapping Act because the penalty could only be imposed in cases where defendant chooses a jury trial. This was held to be an "impermissible burden" upon the assertion of defendants' fifth and sixth amendment rights. As the Court explained in *Brady*, however,

> *Jackson* ruled neither that all pleas of guilty encouraged by the fear of a possible death sentence are involuntary pleas nor that such encouraged pleas are invalid whether involuntary or not. *Jackson ... neither fashioned a new standard for judging the validity of guilty pleas nor mandated a new application of the test ... that guilty pleas are valid if both "voluntary" and "intelligent."*

*Brady*, 397 U.S. at 747, 90 S.Ct. at 1468 (emphasis added) (citations omitted). *See also North Carolina v. Alford*, 400 U.S. at 31, 91 S.Ct. at 164.

If a guilty plea induced by the fear of the death penalty is not constitutionally infirm, then, *a fortiori*, a plea induced by the fear of a "heavy-sentencing" judge cannot be

withdrawn either. Moreover, as the Superior Court found,

> there is no evidence ... that the case assignment system employed by the criminal division of Philadelphia County was adopted with the avowed purpose of soliciting plea bargains or guilty pleas from criminal defendants. Nor is there a claim that the so-called "waiver" or "jury" judges actively seek out their respective designations with the deliberate purpose of coercing defendants to plea bargain or to enter pleas of guilty.

*Commonwealth v. Siers*, 318 Pa.Super. at 222, 464 A.2d at 1311.

As we have explained, Siers' claim is that his constitutional rights were "chilled" because he faced the possibility of a heavier sentence if he had chosen a jury trial. This contention, on this record, must fail because the law is clear that a state "is not forbidden to extend a proper degree of leniency in return for guilty pleas." *Corbitt v. New Jersey*, 439 U.S. at 223, 99 S.Ct. at 499; *accord, Bordenkircher v. Hayes*, 434 U.S. at 362–64, 98 S.Ct. at 667–68; *Brady v. United States*, 397 U.S. at 751–53, 90 S.Ct. at 1470–71.

### IV.

Siers next contends that he was denied his constitutional right to effective assistance of counsel and equal protection of the law by the manner in which attorneys in the Defender Association of Philadelphia were assigned to him. In his habeas corpus petition he alleged that "there is a lack of continuity of counsel from the Defender Association." App. at 171a. In his brief Siers alleges that he was represented by different attorneys at different stages of the litigation: the line-up, the preliminary hearing, and the guilty plea and sentencing proceedings. The Commonwealth, on the other hand, was represented by a single prosecutor throughout.

In substance Siers seems to suggest that the failure to have the same attorney from the line-up to the sentencing was a violation of his constitutional right to effective assistance of counsel. Concurring in the

Court of Common Pleas' affirmance of Siers' sentence, Judge Brosky commented, since Siers "does not allege any specific instances of ineffectiveness on the part of any of the individual counsel who represented him, his challenge is to the system *per se* of assigning counsel to handle particular phases of a case rather than handling a case from beginning to end." App. at 163a.

 Although indigents in criminal cases have a fundamental right to have counsel appointed to represent them, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), there is no corollary right to have any special rapport or even confidence in the court-appointed counsel. *Morris v. Slappy,* 461 U.S. 1, 13–14, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610 (1983). In *Morris,* the Supreme Court explicitly rejected the notion that the sixth amendment guarantees a criminal defendant a "meaningful relationship" with his counsel.[6] The right to counsel does not include more than the right to representation by competent counsel at trial. Nor is there an absolute right to counsel of one's choice. *Davis v. Stamler,* 650 F.2d 477, 479–80 (3d Cir.1981). Moreover, representation of a defendant by more than one attorney has had the approval of federal courts. *Morris,* 461 U.S. at 5–12, 103 S.Ct. at 1613–16; *United States v. Dangdee,* 608

F.2d 807, 809 (9th Cir.1979); *United States v. Mardian,* 546 F.2d 973, 979 n. 9 (D.C.Cir. 1976).

In *Greenfield v. Gunn,* 556 F.2d 935 (9th Cir.), *cert. denied,* 434 U.S. 928, 98 S.Ct. 413, 54 L.Ed.2d 288 (1977), the petitioner asserted that he had been denied effective assistance of counsel during his state trial. In affirming the district court's ruling that the petitioner had failed to demonstrate a denial of effective assistance of counsel, the court of appeals noted that the petitioner had been represented by different attorneys from the public defender's office "during various stages of the proceedings leading up to his conviction." *Greenfield,* 556 F.2d at 938. The *Greenfield* court concluded that the multi-counsel "procedures of the public defender's office were not so defective as to deprive petitioner either of due process or of his sixth amendment right to effective assistance of counsel." *Id.*

 The manner in which the Defender Association has represented Siers in the instant case is not significantly distinguishable from the facts of *Greenfield.*[7] The standard articulated by the *Greenfield* court has been achieved by the "zone defense" system utilized by the Defender Association of Philadelphia. This system includes a procedure whereby a defending attorney is given the file pertaining to a

---

**6.** In *Morris,* an indigent defendant was represented by Goldfine, a public defender who subsequently became ill and was hospitalized. Hotchkiss, another public defender, was assigned to defendant's case. Hotchkiss represented defendant during his trial, notwithstanding the fact that defendant tenaciously objected to such representation and expressed a strong wish to be represented by Goldfine. 461 U.S. at 5–9, 103 S.Ct. at 1613–15. In ruling on behalf of defendant, the United States Court of Appeals for the Ninth Circuit declared that "[t]he right to counsel includes more than just the right to representation by competent counsel at trial. This right would be without substance if it did not include the right to a meaningful attorney-client relationship." *Slappy v. Morris,* 649 F.2d 718, 720 (9th Cir.1981). Because it rejected the notion that such a "meaningful relationship" is guaranteed by the sixth amendment, the Supreme Court reversed the decision of the court of appeals, 461 U.S. at 13–14, 103 S.Ct. at 1617.

**7.** The Ninth Circuit noted both the dangers and the possible necessity of such multi-counsel procedures:

This type of horizontal representation may at times be an inevitable result of workload and budget constraints imposed on a public defender's office. But unless each attorney scrupulously acts to insure that all who participate in the case are informed of every aspect of that attorney's representation, there is some danger that the defendant may be deprived of effective legal assistance. It is good practice for each attorney who participates in a case to record all material information that he has received pertaining to the case, including relevant evidence that has come to his attention, legal arguments or defenses that he has considered—even those he has rejected— and reasons behind any tactical decision he has made in the course of the proceedings. *Greenfield,* 556 F.2d at 938.

defendant that includes all work done by the previous attorney. App. at 130a. In addition, the attorney currently handling a case will often communicate with the prior attorney in order to discover any matters that are not in the file. *Id.* Based on the foregoing, we believe that there is sufficient evidence in the record indicating that "the procedures of the public defender's office were not so defective as to deprive petitioner ... of his sixth amendment right to effective assistance of counsel." *Greenfield,* 556 F.2d at 938.

Finally, it must be stressed that there are no facts pleaded which establish an inference of prejudice by reason of the multi-counsel representation. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Morrison,* 449 U.S. 361, 363–66, 101 S.Ct. 665, 667–68, 66 L.Ed.2d 564 (1981); *United States v. Baynes,* 687 F.2d 659, 669 n. 12 (3d Cir.1982); *United States v. Laura,* 667 F.2d 365, 370–371 (3d Cir. 1981).

## V.

Siers' final contention is that the district court erroneously dismissed his habeas corpus petition without a hearing, on the ground that the petition failed to allege a constitutional violation. In particular, Siers emphasizes that the Commonwealth submitted no responsive pleadings and that the district court never looked at the state court record.

▇ This argument is also without merit because a district court can dismiss a habeas corpus petition if it appears on the face of the petition that petitioner is not entitled to relief. *See Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963); *Patterson v. Cuyler,* 729 F.2d 925, 929 (3d Cir.1984); *Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir.1983); *Rutledge v. Wainwright,* 625 F.2d 1200, 1205 (5th Cir.1980), *cert. denied,* 450 U.S. 1033, 101 S.Ct. 1746, 68 L.Ed.2d 229 (1981).

## CONCLUSION

For the foregoing reasons, the judgment of the district court will be affirmed.