**Michael PEOPLES**

v.

**Thomas FULCOMER, Superintendent; the Attorney General of the State of Pa.; District Attorney of Phila.**

**Civ. A. No. 86–4458.**

United States District Court,
E.D. Pennsylvania.

March 13, 1990.

Robert E. Welsh, Jr., Philadelphia, Pa., for plaintiff.

Elizabeth J. Chambers, Dist. Attorney's Office, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

KATZ, District Judge.

Petitioner seeks *habeas corpus* relief. The procedural history (dealing with the issue of exhaustion of state court remedies) is that the Supreme Court of the United States reversed the Court of Appeals, which had reversed this court. *Castille v. Peoples,* —— U.S. ——, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1988). On remand, the Court of Appeals returned the case. *Peoples v. Fulcomer, et al.,* 882 F.2d 828 (3d Cir. 1989). Mr. Peoples is in jail for robbing a person and setting him on fire.

Mr. Peoples was convicted of charges arising out of the beating of Robert Gallagher on August 2, 1980 at the Tourraine Apartments. Because he was intoxicated, Mr. Gallagher did not recall the details of the incident. He remembered that, at some point, he was hit in the head, kicked and set on fire (n.t. 115–116, 118–119). When he was found by a security guard in the apartment building's seventh floor hallway, he was unconscious and his clothes on fire (n.t. 153–154, 170, 191–192). While hospitalized, Mr. Gallagher was treated for extensive pancreatic and bladder injuries; in

addition, the severity of the burns on his back necessitated a skin graft (n.t. 121).

Mr. Peoples was arrested approximately three hours after Mr. Gallagher was discovered when he was found by police to be in possession of Mr. Gallagher's wallet at a restaurant one block away. (n.t. 198, 201–204, 233–234). Following his arrest, and after waiving his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he told police that he had found Mr. Gallagher's wallet in the street and denied being inside the Tourraine Apartments on the night of the incident (n.t. Suppression, 103–107; n.t. 278, 283, 284).

Mr. Peoples moved unsuccessfully to suppress (1) his statement, (2) physical evidence (Mr. Gallagher's wallet), and (3) in-court identifications and out-of-court photographic identifications made by the desk clerk and the security guard who was in the apartment building when the attack occurred (n.t. Suppression, 3, 170–171, 174, 177–178). The case then proceeded to trial before a jury, presided over by Judge James T. McDermott.

At trial, Mr. Gallagher did not identify Mr. Peoples as his attacker (n.t. 147). He recalled that one of the three abductors and attackers had a high "bush" similar to Mr. Peoples' hairstyle at the time of his arrest (n.t. 118–119, 219–220; n.t. Suppression, 177).

Mr. James Wright, the desk clerk at the apartment building, and Mr. James Hassano, the security guard who found Mr. Gallagher, testified that Mr. Peoples left the apartment building shortly before the discovery of Mr. Gallagher in the seventh floor hallway (n.t. 151–154, 167–170). Mr. Hassano also identified Mr. Peoples as one of the people who entered the apartment building earlier with Mr. Gallagher (n.t. 161–162, 163–164). Mr. Peoples' possession of Mr. Gallagher's wallet three hours after the attack was also shown (n.t. 198, 232). The Commonwealth offered proof that a lineup to determine if Mr. Wright and Mr. Hassano could identify Mr. Peoples which had been scheduled to take place before the preliminary hearing, was cancelled because Mr. Peoples had slicked down his hair before the lineup date despite a court order prohibiting pre-lineup change of appearance (n.t. 218–221, 229–230).

In defense, Mr. Peoples attempted to offer into evidence his exculpatory statement given after his arrest in order to establish an innocent reason for his possession of the wallet. This offer was rejected (n.t. 259). Mr. Peoples then chose to testify on his own behalf.

On direct examination Mr. Peoples acknowledged the convictions which the court ruled admissible for impeachment purposes (n.t. 269). He also acknowledged that his post-arrest statement was incorrect and said that he entered the Tourraine Apartments with Mr. Gallagher to culminate a drug deal, gave Mr. Gallagher money to obtain drugs for him, and waited for Mr. Gallagher on the building's fifth floor holding his wallet as collateral. When Mr. Gallagher did not return after twenty minutes, he and the man with whom he was waiting decided to leave and return to the restaurant where he had earlier met Mr. Gallagher and was later stopped by the police (n.t. 270–275).

On January 16, 1981, the jury convicted petitioner of arson, robbery and aggravated assault.

■ Petitioner's challenge of the trial court's permitting impeachment use of his two prior robbery convictions does not present a constitutional issue. The United States Supreme Court has said that *crimen falsi* impeachment claims are *not* of constitutional dimension. *See Luce v. United States*, 469 U.S. 38, 42, 105 S.Ct. 460, 463, 83 L.Ed.2d 443 (1984) (claims involving the impeachment use of *crimen falsi* crimes, such as arise under Fed.R.Evid. 609(a), raise questions "not reaching constitutional dimensions"). Moreover, Mr. Peoples introduced the convictions in his own direct testimony at trial.

■ Petitioner's contention that the system of assigning judges to jury trials violates his constitutional rights was never presented to the state courts. Rather, petitioner contended that his right to waive a

jury trial was wrongly denied by the trial judge. The reasons given by the trial judge for declining the waiver were soundly within his discretion and did not implicate any constitutionally protected rights of defendant. The Post Verdict Motions raised the issue that the "Court denied defendant's right to the waiver of a jury trial." The failure to raise this issue on appeal to the Superior Court was a waiver of the claim.

■ In any event, I cannot find a constitutionally protected right to have one's case heard by judges whose reputation in sentencing is that they are more lenient than their colleagues assigned to hear jury trials. The practice complained of is not constitutionally infirm as applied in this case. *See Siers v. Ryan,* 773 F.2d 37, 41 n. 4 (3d Cir.1985). The *Siers* court specifically refused to allow the withdrawal of a guilty plea purportedly entered because of that practice. The practice cut even less ice in petitioner's case where he received what the Constitution guarantees him—a jury trial.

■ With regard to petitioner's contention that his identifications by Mr. Hassano and Mr. Wright were tainted, Judge Mirarchi summarized the record as follows in his Opinion of June 8, 1982:[1]

> Judge McDermott, based on the evidence presented, found that the photo array was not suggestive, even though Judge McDermott did agree that the photo array contained only one photo of a man with a bush hair style. That defendant had an unusual bush which made him distinctive. Furthermore, notwithstanding the photo array, the court concluded that given the uniqueness of the defendant's hair, the scar across his nose, the opportunity for the witnesses to view the defendant at a distance of approximately three feet, to speak to him and to observe him for at least three minutes, the witnesses had an independent basis for the identification and those witnesses identified the defendant from their own opportunity to observe him at

the scene and at the time of this incident . . .

> Mr. Wright testified that he watched defendant enter the building with other men and walk past him towards the elevator. A few minutes later, the defendant and another man came off the elevator and walked quickly to the exit doors. However, defendant walked to the wrong doors and Mr. Wright told defendant he had to use the other doors.

At the suppression hearing, the identification witnesses, James Hassano and James Wright, testified that they observed the petitioner enter the Tourraine Apartments with the victim, Mr. Gallagher. Shortly thereafter, both witnesses observed the petitioner leave the building in a hurry. Both witnesses had several opportunities to view the petitioner for several minutes at close range, a distance of approximately three feet, in a lighted entranceway. Furthermore, petitioner possessed unique facial characteristics, including features described by one witness as "sharp," a large Afro bush and a scar across his nose which the witnesses remembered. Both were positive in their identification of petitioner. Since the evidence fully supported the state court's finding that the identifications were based on the uniqueness of petitioner's facial characteristics and the lengthy opportunity to observe the petitioner, the state court's conclusion that the witnesses' in-court identifications of petitioner has an independent basis was proper. More importantly, the claim does not implicate any federal rights of petitioner and the identification evidence was harmless beyond a reasonable doubt since Mr. Peoples admitted in his testimony at trial that he was at the Tourraine apartments with Mr. Gallagher (as opposed to his earlier claim denying being inside the Tourraine and stating he found Mr. Gallagher's wallet on the street).

■ Petitioner speculates that the Pennsylvania courts would unduly delay deciding his ineffective assistance of trial counsel claims, if presented. At the very least, such a contention is premature.

1. Judge McDermott's findings are in the Transcript of 1/12/81 at pp. 176–178.

**1246**

## ORDER

AND NOW, this 13th day of March, 1990, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the Petition for Writ of Habeas Corpus is DENIED. There is no probable cause for appeal.