Larry Eugene **FREEMAN**, Petitioner,

v.

Raymond **MUNCY, Warden,** et al., **Respondents.**

Civ. A. No. 90–00237–R.

United States District Court, E.D. Virginia, Richmond Division.

Oct. 1, 1990.

Larry Eugene Freeman, pro se.

Katherine B. Toone, Asst. Atty. Gen., Richmond, Va., for respondents.

## MEMORANDUM AND ORDER

SPENCER, District Judge.

Larry Eugene Freeman, a Virginia state prisoner, brings this action for a writ of habeas corpus attacking his convictions of capital murder, abduction with intent to defile, robbery and rape, upon which he received four consecutive life sentences. Respondents have filed their answer and petitioner has responded thereto. Jurisdiction is appropriate pursuant to 28 U.S.C. § 2254.

Petitioner's claims may be fairly summarized as follows:

1. Petitioner was denied effective assistance of counsel when he was advised to plead guilty after his attorneys advised him:

    (a) that the Commonwealth's scientific evidence was conclusive.

    (b) that there was eyewitness testimony which would be both reliable and corroborated by expert testimony.

    (c) that petitioner had no viable defenses available.

    (d) that petitioner would not be granted a change of venue.

    (e) that he would definitely be found guilty by a jury based on the mere fact that he was a black defendant and the victim was white.

    (f) a jury would undoubtedly sentence petitioner to death by electrocution.

    (g) that the only way to avoid the death penalty would be to plead guilty and seek mercy from the court.

2. Defendant's plea was not knowingly and voluntarily entered into because his attorneys:

    (a) had petitioner transferred from the Richmond City Jail to the Hanover County Jail, thereby separating petitioner from his co-defendants.

    (b) solicited the aid of petitioner's mother and other family members to induce petitioner to plead guilty.

    (c) sent petitioner a newspaper article in which a defendant was sentenced to death by a jury inferring that petitioner would meet the same fate if he pled not guilty.

(d) described in gruesome detail the process of death by electrocution.

(e) instructed him to lie in answering the trial judge's voir dire on the voluntariness of his guilty pleas.

3. The trial court abused its discretion when it refused to allow petitioner to withdraw his pleas of guilty.

The record reflects that petitioner was indicted on March 16, 1982, for the murder of Gloria Mae Scales during the commission of rape, robbery and abduction occurring on September 14, 1981. Additionally, he was charged with the rape, robbery and abduction of the victim. Petitioner retained David E. Boone and George Wm. Warren, IV, to represent him. Counsel filed numerous pretrial motions at both the district court and the circuit court level. Approximately one week before the scheduled trial of the cases before a jury, petitioner was arraigned and pled guilty to all charges.

During those proceedings, defendant was addressed personally by the court. He stated that he fully understood the charges against him and the elements of each crime charged; that he was pleading guilty because he was in fact guilty; that he understood he was waiving his right to trial by jury; that he had not been threatened or forced into pleading guilty by anyone connected with the state; that no one had made any promise of leniency in return for his pleas; that he had discussed the amount of punishment possible with his attorneys; that he had had ample time to consult with his attorneys and to discuss all possible defenses; that the decision to plead guilty was his own; and that he understood he was waiving any right to appeal the decision of the court. At one point, the court did inquire, "Are you entering the plea of guilty freely and voluntarily?" The defendant replied initially, "No, sir." After conferring with Mr. Boone, defendant replied, "Yes, sir." The Commonwealth's Attorney also advised the court that there had been no plea bargains; that the Commonwealth intended to ask for the death penalty.

The case was continued to August 23, 1982, for the presentation of evidence on the charges. At that hearing, the Commonwealth and petitioner stipulated to the testimony of Leonard Anderson and William Gregory. Anderson and Gregory were co-defendants represented by separate defense counsel. Those attorneys also agreed that the stipulations were appropriate.

According to the stipulation, Mr. Gregory would have testified that he and petitioner had discussed the possible robbery of a 7–11 Store in Hanover County on September 11, 1981. Petitioner needed money in order to repair his automobile. On September 14, 1981, he, together with Leonard Anderson and petitioner, drove to a 7–11 Store in petitioner's brother's car. Inside the 7–11 Store petitioner pulled a knife and robbed the cashier at knifepoint. Petitioner then forced her into the back seat of the car with Mr. Anderson, and they all proceeded to a remote area. Mr. Anderson had sexual intercourse with the victim in the car. Later she was forced out of the car. Gregory did not leave the vehicle, but continued to watch the victim, Anderson and petitioner. At one point he saw petitioner appear to be stabbing the victim, although he never actually saw a knife.

Mr. Anderson's testimony would have corroborated the statements of Mr. Gregory. He admitted his participation in the abduction and rape, but denied knowledge of the robbery. He would have testified that petitioner and Gregory came out of the 7–11 Store and put the victim in the back seat with him. Petitioner then told him, "She's yours. I brought her for us." Anderson then had sexual intercourse with the victim during which time the victim told him she would do anything if they just wouldn't kill her. Anderson undressed the victim inside the car. They drove down by a river and he, petitioner and the victim got out. He again had sexual intercourse with the victim while petitioner forced her to engage in oral sex. Petitioner then engaged in sexual intercourse with the victim during which he began to stab her.

Both Gregory and Anderson were available to be called as witnesses, and their attorneys were present in the courtroom. Petitioner did not elect to call them.

Additionally, through stipulation, plaster casts of footprints found in the area where the victim's body was located were introduced. A forensic report indicating that the shoes worn by petitioner were consistent with the imprints at the scene was stipulated. Also stipulated was a forensic report indicating that petitioner's shoes had traces of blood on them. Plaster casts of tire prints found in the area were introduced and a sheriff's office investigator testified that the treadmarks were consistent with the tires found on petitioner's brother's car. A kitchen knife was also introduced. A forensic expert testified that the wounds inflicted on the victim were consistent with what the infliction of wounds by the knife would have been. The knife was found in petitioner's automobile. Additional forensic reports were admitted indicating that a pubic hair from a Caucasian female had been found in the rear of petitioner's brother's car; that traces of hair found on the victim were consistent with the type of hair petitioner had. In addition, the testimony of Frankie Anthony Johnson was stipulated. Mr. Johnson's testimony would have revealed that the defendant admitted that he had stabbed and raped a woman in Doswell. Mr. Johnson was not a police informant nor was he under any charges. He was simply a citizen.

Another witness, Stuart Baylor, would have been called and it was stipulated he would have testified as shown in the transcript of the preliminary hearing. Mr. Baylor testified at that hearing that he had been incarcerated in the Hanover County Jail with petitioner and that petitioner admitted to him that he had killed Ms. Scales after robbing her of $40 that he needed in order to repair his car. Baylor would also have testified that petitioner told him he had forced the victim into committing oral sodomy, then raped her and finally stabbed her to death.

Investigator Ray testified that petitioner had denied his participation in the crime and had insisted he had an alibi. Petitioner stated to Ray that he had gone up to Scott's Grill in Caroline County to meet with a man to whom he owed approximately $40. Petitioner told Ray that he and Rosemary Hunter were together on that occasion and that after paying the debt he took Ms. Hunter home. On the way, they stopped and had sexual intercourse. Ray further testified that he interviewed Rosemary Hunter who adamantly denied she had been with petitioner on the date in question. She stated that the only time she accepted a ride from petitioner was approximately one or two months before the night of the crime. Ray also verified that on the night of the offense Rosemary Hunter spent the night with her aunt. Finally, a state medical examiner testified that the victim suffered from 26 stab or slashing wounds. She testified that the knife found in petitioner's automobile would have produced wounds consistent with those found on the victim.

After hearing the evidence, the trial judge found petitioner guilty of all offenses. Sentencing was set for November 22, 1982. Immediately prior to the sentencing hearing, petitioner filed a motion to withdraw his guilty plea on grounds that his decision to enter pleas of guilty was the result of his fear of the death penalty combined with his borderline intelligence. In denying the motion, the trial judge noted that he had observed petitioner during the entry of his pleas of guilty and had found the pleas to be knowingly and voluntarily entered into. He reiterated that finding and proceeded to the sentencing phase of the proceedings. Ultimately, petitioner received four life sentences upon his convictions.

Petitioner noted an appeal from the denial of his motion to withdraw his guilty pleas. A hearing was held to determine whether or not counsel should be appointed to represent him on appeal. During that hearing, petitioner specifically requested that his trial attorneys represent him in appellate proceedings. On direct appeal, petitioner raised only the denial of his mo-

tion to withdraw his guilty plea on the grounds stated to the trial court. The appeal was denied and the decision was affirmed by the Supreme Court of Virginia on January 25, 1984.

Petitioner next filed a petition for writ of habeas corpus in the Supreme Court of Virginia on February 27, 1989. In that proceeding he raised the issue of ineffective assistance of counsel on the specific grounds that:

1. Counsel repeatedly admonished petitioner that he must plead guilty if he hoped to avoid the electric chair.

2. Counsel never discussed with petitioner possible defenses, but rather focused their energies in extracting a guilty plea from him.

3. Counsel was aware that there were no eyewitnesses to the crimes, yet counsel coerced petitioner to abandon his right to trial.

4. Petitioner repeatedly told counsel he was innocent.

■ An examination of the grounds raised in petitioner's direct appeal and in his petition for writ of habeas corpus to the Virginia Supreme Court reveals that his current claims 1(a) through (e) and (g) have never been presented to the Supreme Court of Virginia. Thus, the current petition contains both exhausted and unexhausted claims. Ordinarily, such petitions should be dismissed, without prejudice, to permit exhaustion. *See Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). However, where "it is clear that collateral relief would be unavailable, and that petitioner has no other available state remedies, exhaustion is not required." *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989). It is clear that the Virginia courts would apply Va.Code § 8.01–654(B)(2) to bar further state review of his unexhausted claims.[1] Accordingly, to avoid dismissal of those claims for his failure to comply with state procedural requirements, petitioner must show "cause for his noncompliance" and "actual preju-

dice resulting from the alleged constitutional violation." *Wainwright v. Sykes*, 433 U.S. 72, 84, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977). He has failed to show either. Nor is this an extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). The evidence of petitioner's guilt is overwhelming. Accordingly, claims 1(a) through (e) and (h) will be DISMISSED.

■ In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the court established a two-prong test for determining whether assistance of counsel was so defective as to require reversal of a conviction. First, the defendant must establish that counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687–88, 104 S.Ct. at 2064–65. Second, he must establish that the deficient performance prejudiced the defense to the extent that he was deprived of a fair trial. When an inmate claims he has been denied effective assistance of counsel in his decision to plead guilty, the *Strickland* test is slightly modified. Petitioner must still establish that the advice rendered fell below an objective standard of reasonableness. He must also show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

■ The transcripts of the proceedings in the circuit court, together with the motions, responses, and orders entered therein establish that counsel was vigorously pursuing both formal and informal discovery. The evidence of petitioner's guilt consisted of the testimony of two eyewitnesses as well as defendant's confession on two separate occasions to two separate individuals that he was in fact the perpetrator of the crimes. Forensic evidence relentlessly

---

**1.** Claims 2 through 5 are actually found in petitioner's response to the motion to dismiss filed in the Supreme Court of Virginia.

pointed to petitioner as present at the scene of the crime and in possession of the murder weapon. The crime itself was particularly outrageous and vile. The victim was forced to commit an act of fellatio upon petitioner and was then stabbed repeatedly while petitioner continued to rape her. The medical evidence established that the victim remained conscious for a considerable length of time after the defendant had left her for dead. Petitioner's alibi witness denied to police officers that she was present with petitioner on the night of the offense. Her aunt corroborated her testimony. The witness refused to talk to defense counsel.

Moreover, counsel was aware that petitioner had been psychiatrically examined and determined competent to stand trial. There seemed little hope for a psychiatric defense and, in the face of the overwhelming evidence, petitioner's protestations of innocence would not likely have prevailed.

The prosecution was adamant that it would not waive a jury and would insist on the death penalty. The only way to avoid a jury was by entry of a plea of guilty. The paramount issue became not one of guilt or innocence, but whether or not defendant would be put to death. Counsel believed that defendant's chance of obtaining mercy was greater with the trial judge than with a jury. Counsel's advice that petitioner plead guilty was advice rendered after a thorough investigation of the facts and the law and was the result of informed professional deliberation. The advice did not fall below an objective standard of reasonableness.

Nor has petitioner established that, but for the advice of his attorneys, he would not have pled guilty. His protestations of innocence notwithstanding, the evidence against him was overwhelming. His fear of the death penalty was equally overwhelming, as he himself, admits. That his attorneys may have stressed the possibility of the death sentence might well have convinced petitioner to plead guilty. The fact remains, however, that it was not his attorneys who engendered the fear, it was the penalty itself.

Accordingly, claims 1(f) and 1(g) will be DISMISSED.

Claims 2(a) and (e) have never been presented to the Virginia Supreme Court. Nevertheless, it is clear the Virginia Supreme Court would invoke Va.Code § 8.01–654(B)(2) to procedurally bar further review of the claims. Plaintiff has failed to demonstrate cause for his failure to comply with the state procedural bar nor has he shown prejudice from the alleged constitutional deprivation. Under the *Teague* criteria, Claims 2(a) and (e) will be DISMISSED.

▆▆▆▆ Claims 2(b) through (d) were probably presented to the Virginia Supreme Court in Claims 1 and 2 of petitioner's application for a writ of habeas corpus. Accepting the factual allegations in Claims 2(b) through (d) as true, petitioner has nevertheless failed to state grounds for relief. The gravamen of the three claims is that his fear of the death penalty was what motivated him to plead guilty.[2] However, fear of the death penalty does not invalidate an otherwise valid guilty plea. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). A review of the transcript reveals that petitioner was advised of the elements of the offenses, he was advised of the possible penalties, he was advised of his right to plead not guilty and to demand a trial by jury, and he was advised of the consequences of his pleas. It is axiomatic that a guilty plea must be an informed and intelligent decision of the defendant. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). The defendant must be advised of the critical elements of the offense to which he is pleading guilty. *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), and the accused must be advised of the direct consequences of his pleas. *See Manley v. United States*, 588 F.2d 79 (4th Cir.1978); *Cuthrell v. Director, Patuxent Institution*, 475 F.2d 1364 (4th Cir.), *cert. denied*, 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973). A guilty plea must also be voluntary in that it

---

**2.** As discussed *supra,* counsel's advice that plaintiff plead guilty as the only effective way to avoid the death penalty was not constitutionally deficient.

must be "a voluntary and intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). Statements of the accused made at arraignment which factually demonstrate the validity of his pleas are conclusive absent some compelling reason why they should not be, such as ineffective assistance of counsel. *Via v. Superintendent, Powhatan Correctional Center,* 643 F.2d 167 (4th Cir.1981).

The record clearly establishes that petitioner's statements made during his arraignment factually demonstrated that his plea was voluntary. Moreover, petitioner has failed to demonstrate that his attorneys were ineffective in urging him to plead guilty. Accordingly, Claims 2(b) through (d) will be DISMISSED.

In his remaining claim, petitioner alleges the trial court abused its discretion in refusing to permit him to withdraw his guilty pleas because of his fear of the death penalty. There is no constitutional right to withdraw a guilty plea. *See Siers v. Ryan,* 773 F.2d 37 (3d Cir.1985), *cert. denied,* —— U.S. ——, 109 S.Ct. 1758, 104 L.Ed.2d 194 (1989). Because the plea was knowingly and voluntarily made, Claim 3 is without merit.

Accordingly, the petition will be DENIED and this action will be DISMISSED.

An appropriate order shall issue.