**James JOHNSON**

v.

**William GRAY, et al.**

**Civ. A. No. 87–6625.**

United States District Court,
E.D. Pennsylvania.

Jan. 31, 1989.

James Johnson, Graterford, Pa., pro se.

Elizabeth Chambers, Asst. Dist. Atty., Philadelphia County, Philadelphia, Pa., for respondent.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

In this *pro se* petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, petitioner James Johnson, who is currently incarcerated at the State Correctional Institution at Graterford, Pennsylvania, alleges the following claims: (1) his plea of guilty was not entered knowingly and voluntarily due to the state court's failure to fully explain to him the elements of the crimes and the sentence which could be imposed; (2) his counsel advised him to enter a plea of guilty and guaranteed him that he would be sentenced to a maximum of five years imprisonment were he to plead guilty; and (3) his counsel was ineffective for failing to pursue his appeal in the state court system.

On September 27, 1966, a robbery took place at a jewelry store at Chelten and Chew Avenues, Philadelphia, Pennsylvania. Police were summoned, shots were fired, and a civilian was wounded. On February 1, 1968, petitioner, represented by George A. Johnson, an Assistant Public Defender, entered a guilty plea before the Honorable Theodore B. Smith, Jr. of the Court of Oyer and Terminer in and for the County of Philadelphia, to the following charges: burglary, aggravated robbery, carrying a concealed deadly weapon, aggravated assault, and attempted murder. On March 28, 1968, Judge Smith sentenced petitioner to a total term of five to twenty years incarceration.

Petitioner timely appealed within the forty five day time limit to the Superior Court of Pennsylvania. On May 10, 1968, Mr. Johnson's appeal was certified by the Superior Court which subsequently informed him that he was granted leave to proceed

*in forma pauperis* and was advised that he was "entitled to have counsel appointed to represent you, to prepare your Briefs, and argue your case." On June 4, 1968, petitioner requested appointment of counsel. On June 12, 1968, the Defender Association of Philadelphia was appointed. The state court record notes a withdrawl and discontinuance of the appeal by "Ronald J. Brockington, Attorney for Appellant" dated March 25, 1969. The appeal was dismissed December 23, 1969 for failure of the defense to proceed on the appeal.

*Thirteen years later*, on February 4, 1982, Mr. Johnson filed a petition under Pennsylvania's Post Conviction Hearing Act ("PCHA"), 42 Pa.C.S.A. §§ 9541–9551, in which he contended his guilty plea was involuntary and that his failure to pursue an appeal of the plea was due to ineffective assistance of counsel. On September 28, 1982, a PCHA hearing was held before the Honorable Edward J. Blake of the Court of Common Pleas, First Judicial District of Pennsylvania. Petitioner, represented by Harry Seay, Esq., court appointed counsel, chose not to adduce any additional testimony or evidence but, rather, submit the matter based on the record as it then stood. On January 20, 1984, Judge Blake denied the petition on the merits, finding that petitioner had entered his plea knowingly and voluntarily; that petitioner's counsel was not ineffective in advising petitioner to plead guilty; and that petitioner was not deprived of his right to appeal since the PCHA permitted petitioner to raise precisely the same issues which he could have raised on direct appeal.

Petitioner then appealed the PCHA denial to the Superior Court of Pennsylvania which dismissed the appeal on March 6, 1985, on the ground that petitioner waived his substantive claims by his abandonment of the direct appeal. Petitioner's request for allowance of appeal to the Supreme Court of Pennsylvania was denied on January 7, 1986. Petitioner filed his petition for writ of habeas corpus on October 27, 1987. The matter was referred to a United States Magistrate who, on October 26, 1988, issued a Report and Recommendation.

In his Report and Recommendation, the Magistrate preliminarily determined that the petitioner had, pursuant to 28 U.S.C. § 2254(b), exhausted all available state remedies. *See Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). Moreover, while recognizing that the petitioner failed to comply with state appellate procedural requirements, *see United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 438 (3d Cir.1982), the Magistrate concluded that the record did not support a finding that the petitioner had "deliberately bypassed" the state courts. *See Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963). Because the Third Circuit, in *Diggs v. United States*, 740 F.2d 239, 244 (3d Cir.1984), held that the "deliberate bypass" standard of *Fay v. Noia*, controls when a federal habeas court is confronted with a procedural default arising from a failure to take a direct appeal, the Magistrate found that petitioner's petition under 28 U.S.C. § 2254 was properly before the Court. *See also Beaty v. Patton*, 700 F.2d 110, 112–113 (3d Cir.1983) (per curiam); *Boyer v. Patton*, 579 F.2d 284, 286–288 (3d Cir.1978). Accordingly, the Magistrate proceeded to address the merits of petitioner's constitutional claims.

The Magistrate found that petitioner's plea of guilty was entered intelligently and voluntarily and that Mr. Johnson fully understood the charges to which he was pleading guilty as well as the constitutional rights he was waiving as a result of so pleading. Moreover, the Magistrate declined to consider the petitioner's claim that his counsel was ineffective for failing to pursue his appeal on the ground that because there is no merit to petitioner's involuntary plea claim, counsel's performance can not be deemed constitutionally deficient for failing to appeal a meritless case. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Magistrate, therefore, recommended that the petition for writ of heabeas corpus be denied.

Petitioner thereafter filed timely objections to the Magistrate's Report and Recommendation. Pursuant to Local Rules of

Civil Procedure 7(IV)(b), this Court is required to review the record and determine the issues *de novo*.

As a general rule in dealing with the merits of a petition for habeas corpus, where there are material facts in dispute which if proven would entitle a petitioner to relief *and* the petitioner has not been afforded a full and fair evidentiary hearing in state court, either at the time of the trial or in a collateral proceeding, a federal habeas court must hold an evidentiary hearing. *Townsend v. Sain*, 372 U.S. 293, 312–313, 83 S.Ct. 745, 756–757, 9 L.Ed.2d 770 (1963); *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir.1987). However, "this is not to say that every set of allegations not on its face without merit entitles a habeas corpus petitioner to an evidentiary hearing." *Blackledge v. Allison*, 431 U.S. 63, 80, 97 S.Ct. 1621, 1632, 52 L.Ed.2d 136 (1977). Indeed, as the Third Circuit held in *Mayberry v. Petsock*, 821 F.2d at 185, "bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing." *See also Wacht v. Cardwell*, 604 F.2d 1245, 1246 n. 2 (9th Cir.1979).

■ A review of the state court proceedings demonstrates that the petitioner was provided a full and fair evidentiary hearing in state court concerning the issues he now raises in his habeas petition. Indeed, as previously stated, a PCHA hearing was held in the Philadelphia Court of Common Pleas on September 28, 1982. The transcript of that hearing unambiguously demonstrates that the petitioner was afforded an opportunity to adduce whatever evidence he wished concerning his allegations. The transcript further reveals that the petitioner, while represented by counsel in which petitioner specifically voiced complete confidence, chose not to adduce evidence but, rather, was content to submit on the basis of the record. The following exchange took place between the petitioner, petitioner's attorney, Mr. Harry Seay, and the Court:

> Mr. Seay: After discussions with Mr. Johnson, the petitioner in the matter at the bar of the Court, we are, subject to your Honor's approval, asking leave to submit the matter based on the Record as the Record stands now. That would include the Notes of Testimony and any attendant records from the Quarter Sessions file in Mr. Johnson's case; in addition to which I would ask leave of the Court to submit to the Court a memorandum of law in support of the Petitioner's petition with regard to those aspects raised on the Record.
>
> Court: Mr. Johnson, you have confidence in your attorney in this matter, Mr. Seay?
>
> Petitioner: Yes, sir.
>
> Court: Are you satisfied that he has represented your best interests up to this point in this case?
>
> Petitioner: Yes, I have.
>
> Court: Do you understand what he has said to the Court here this morning?
>
> Petitioner: Yes, your Honor.
>
> Court: He is saying that you have before the Court a petition under the Post Conviction Hearing Act and he is saying the allegations you set forth in that petition, the things you say were in effect wrong and can be established by examining the record without any additional testimony and then it will be his job, and he will confer with you in this, to submit a memorandum of law and direct my attention to the particular part of the Record which he says establishes the claim that you and he make in your petition.
>
> Do you understand that?
>
> Petitioner: Yes, sir.
>
> Court: Do you have any questions you want to ask the Court?
>
> Petitioner: No, sir.

Tr. 2–3. Based upon this record, we conclude that because the petitioner was afforded a full and fair evidentiary hearing during a collateral proceeding in state court, this Court is not required to hold an evidentiary hearing.

■ We note further that based on the impressively thorough colloquy between the trial judge and both petitioner and his attorney as well as the explicit representations made by the defendant at the time he

entered his guilty plea, the conclusory allegations raised by the petitioner in his habeas petition are wholly incredible. As the Supreme Court stated in *Blackledge v. Allison:*

> The representations of the defendant, his lawyer, and the prosecutor at the original plea hearing, as well as any findings made by the judge accepting the pleas, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, *as are contentions that in the face of the record are wholly incredible.*

431 U.S. 63, 73–74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); *see also Machibroda v. United States*, 368 U.S. 487, 495–496, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962) (§ 2255 petition); *United States v. Williams*, 615 F.2d 585, 591 (3d Cir.1980). Accordingly, we proceed to a *de novo* determination of the issues raised by the petitioner in his Objections to the Report and Recommendation of the Magistrate.

As previously stated, petitioner alleges that his plea of guilty was not intelligently and voluntarily entered due to both the trial judge's failure to fully explain to him the elements of the crimes charged and the sentence which could be imposed as well as his counsel's advice to plead guilty and misrepresentation that, upon a plea of guilty, a maximum sentence of five years imprisonment would be imposed. In evaluating petitioner's claims, we note that the constitutional prerequisites for a valid guilty plea are substantially the same in federal and state courts. *See Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *United States v. Trott*, 779 F.2d 912, 914 n. 1 (3d Cir.1985).

Prior to accepting a guilty plea, a trial judge has a duty to make an affirmative showing that the plea is intelligent and voluntary. *Boykin v. Alabama*, 395 U.S. at 242, 89 S.Ct. at 1711. Indeed, the "long

standing test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) *quoting North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). A guilty plea may be constitutionally infirm if defendant failed to understand the constitutional rights he was waiving by pleading guilty or had an incomplete understanding of the charges lodged against him. *Henderson v. Morgan*, 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 2257 n. 13, 49 L.Ed.2d 108 (1976). Moreover, a guilty plea gained through "coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality." *Boykin v. Alabama*, 395 U.S. at 242–243, 89 S.Ct. at 1712; *see also United States v. Cole*, 813 F.2d 43, 46 (3d Cir.1987).

The Supreme Court, in *McCarthy v. United States*, 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969) held that the most efficient method of insuring the intelligent, voluntary nature of the guilty plea is through the colloquy between the trial judge, the defendant, and the defendant's attorney. The Court stated that such a colloquy is:

> Designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, . . . to produce a a complete record at the time the plea is entered of the factors relevant to this voluntariness determination.[1]

*Id. See also United States v. Allen*, 804 F.2d 244, 247 (3d Cir.1986). At a minimum, such a colloquy should establish that the defendant understood the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offense for which he is charged, and the permissible range of sentences. *Boykin v. Alabama*, 395 U.S. at 245 n. 7, 89 S.Ct. at 1713 n. 7.

In the instant case, the state trial judge, some twenty years ago, conducted a

---

1. While the *McCarthy* holding addressed the obligation of federal judges under Fed.R.Crim.P. 11, the reasoning is equally applicable to state judges.

colloquy which would meet or exceed contemporary Supreme Court requirements. Indeed, the trial judge first explained the nature of the proceeding. N.T. 3–4. The trial judge meticulously informed petitioner of all the elements of the crime to which he pled guilty. N.T. 7–9. Moreover the trial judge fully apprised petitioner of both the maximum sentence that could be imposed for each crime charged as well as the aggregate maximum sentence that could be imposed:

> Court: Do you understand fully and completely that after I hear the evidence of these various crimes, or a summary, that on the burglary bill, to which you will have pleaded guilty and we have heard evidence on, that you can be sentenced to a maximum term of twenty years. Do you understand that?
>
> Defendant: Yes, sir.
>
> Court: On that bill alone. That on aggrevated robbery you can get an additional 20 years. Do you understand that?
>
> Defendant: Yes, sir.
>
> Court: That for the conspiracy, that is, the agreement with the other man, regardless of where he is or what has happened to him, or will happen to him, that you can get an additional sentence of two years?
>
> Defendant: Yes, sir.
>
> Court: That's 42 years. That for carrying concealed deadly weapons, your guilty plea being a confession of that, also, you cam get an additional—
>
> District Attorney: It is a violation of the Uniform Firearms Act, sir, which makes it three years.
>
> Court: Three years. That makes it 45 years. That for your confession of assaulting a person or persons with the intent to murder them....you can get an additional seven years, which brings us up to 52 years. And for your attempt—
>
> District Attorney: Attempt with intent to kill, sir. That is for the shot which was directed at a policeman but went across the street and hit a boy. That is another seven.

> Court: Another seven years. That's 59 years, maximum sentence.
>
> \* \* \* \* \* \*
>
> Court: You understand what the maximum sentence could be on your guilty pleas, which amounts to a confession of all these crimes—some 59 years. Not that the Court will impose 59 years, but that is what it can impose.... You understand that?
>
> Defendant: Yes, sir.

N.T. 7–9, 12.

The trial judge then proceeded to detail the nature of the guilty plea:

> Court: You understand that if you plead guilty, if I permit you to ...that this is an admission, a clear and absolute admission by you that you committed the crimes I have already read off to you. Do you understand that?
>
> Defendant: Yes, sir.
>
> Court: You are admitting that you did all of these things charged. Do you understand that clearly?
>
> Defendant: Yes, sir.

N.T. 6. In addition, the trial judge fully explained the rights that petitioner would be surrendering, including the right to a jury trial and the right to require the state to prove his guilt beyond a reasonable doubt, were he to plead guilty. N.T. 5–6. We note that petitioner was fully aware of his right to a jury trial inasmuch as prior to his entry of a guilty plea, he had participated in the voir dire for the then anticipated jury trial. Moreover, the trial judge fully explained to the petitioner the procedures that would follow an entry of a guilty plea:

> Court: If I permit you to plead guilty, and you do plead guilty, I will then hear witnesses on this stand, and you will hear them, also. We will hear them in detail, or we will hear them in a summary, some one detective, maybe, who will tell the whole story. And you will then have a right, yourself if you choose, to say what you want to say about the crime. Do you understand that?
>
> Defendant: Yes, sir.

Court: You do?

Defendant: Yes, sir.

N.T. 7.

As a further protection of petitioner's rights, the trial judge continually questioned Mr. Johnson regarding his ability to understand the proceedings and the consequences of his plea. N.T. 16, 66, 95, 108. The transcript reads in relevant part:

Court: Incidentally, if at any time I ask you a question and you don't understand the meaning of my question, tell me, and I will try and rephrase it so that you will understand me.

Defendant: Yes, sir.

Court: Do you understand that?

Defendant: Yes, sir.

N.T. 15. In addition, the trial judge confirmed that Mr. Johnson's attorney had also informed him of the nature of the charges, the possible sentence that could be imposed, and the consequences of the guilty plea. N.T. 16–18.

Finally, the trial judge specifically questioned the petitioner as to whether he was entering a guilty plea due to threats, promises or inducements made by anyone:

Court: Now, I want to make clear to you that I will accept your plea of guilty if you make certain to me that your plea of guilty is made by you, of your own free will, and without any compulsion or threats directed against you by anyone. So I am going to ask you the direct question: Is your proposed plea of guilty made of your own free will and without any compulsion or threats made upon you by anyone?

Defendant: No, sir; no compulsion or threats were made against me.

Court: No compulsion or threats were made by anyone upon you?

Defendant: That's right.

Court: Now before I accept your plea of guilty, I have to inform you that although a plea of guilty will be taken into consideration by me, the Court, in fixing your sentence, the sentence to be imposed on you, *I cannot under the law, before I hear the evidence or a summary of all the evidence, give any assurance to you or make any promise to you that if you plead guilty, the Court will, in consideration of your plea, impose a sentence less than that which might be imposed upon you in the event that you did not plead guilty.*

N.T. 14–15 (emphasis added). The trial judge confirmed the voluntary nature of the plea by questioning petitioner's attorney:

Court: Are you, having consulted with him, assured that the plea he wants to enter now of guilty is voluntarily given and entered, or that it will be voluntarily entered?

Attorney: Yes, it is. I believe it is voluntary. I explained to him all the factors that your Honor mentioned.

.        .        .        .        .

Court: You are satisfied, then, that no threats have been made to the defendant, or any promises of leniency, or anything of that sort?

Attorney: No, I certainly did not threaten him, and I know that the Court or this District Attorney did not threaten him. I know I did not promise him anything. I know that the Court did not, and I know this District Attorney did not.

Court: Very well. Mr. George Johnson, then, as a member of the bar of this Court, you, of course, understand that a plea of guilty is a factor to be considered in determining the sentence to be imposed upon this defendant, and you also understand that before the Court hears evidence or a summary of the evidence in this case, that no promise or assurance can be given to the defendant as to a sentence that I may impose upon him in the event that he does plead guilty to the indictment.

Attorney: Yes.

Court: Have you made this clear to the defendant?

Attorney: I made this clear to him. I discussed the guilty plea with Mr. Johnson last night at the close of Court, and again this morning. and *I told him specifically that your Honor*

*had not promised him any sentence, and could not under the law, and would not, based on my past dealings with your Honor.*

Court: Even if he pleads guilty.

Attorney: Yes, even if he pleads guilty.

N.T. 17–20 (emphasis added).

Based upon the aforementioned colloquy, the trial judge made the following finding:

The Court desires it to be noted of record that it is satisfied that the defendant understands his legal and constitutional rights as a defendant in this proceeding; that he understands the nature and consequences of a plea of guilty to the indictment, and that his plea of guilty is being made by him of his own free will and without any compulsion, threats, or promises by anyone.

N.T. 20–21. So, too, did the PCHA judge hold that the petitioner entered his guilty plea knowingly and voluntarily and that the plea was valid. As the Third Circuit held, in *Siers v. Ryan*, "the state court's conclusion that the defendant's guilty plea was voluntary is entitled to a presumption of correctness on our part." 773 F.2d 37, 42 (3d Cir.1985); *see also* 28 U.S.C. § 2254(d). *Cf. Patterson v. Cuyler*, 729 F.2d 925, 932 (3d Cir.1984). Based upon this presumption and our review of the record, we find that petitioner's first ground for habeas relief, to wit, that the trial judge's failure to fully explain the elements of the crime and the sentence which could be imposed, is wholly without merit. We conclude that petitioner's plea was made intelligently and voluntarily and that Mr. Johnson fully understood the constitutional rights that he was waiving and the charges lodged against him.

Petitioner's second ground for habeas relief is that his counsel advised him to enter a plea of guilty and guaranteed him that he would be sentenced to a maximum of five years imprisonment. We choose to analyze this ground in two parts: the allegation that petitioner's counsel "guaranteed" him a maximum five year sentence and the allegation that his counsel was ineffective for advising him to plead guilty.

■ As previously stated, this Court rejects as incredible petitioner's unsupported allegation that his counsel had guaranteed him a maximum five year sentence. Indeed, we view this allegation within the following salient points:

1. During the colloquy, Mr. Johnson, while under oath, repeatedly assured the trial judge that no one had induced him to plead guilty by promising him any sentence;

2. During the colloquy, Mr. Johnson's attorney explicitly stated that he had made no promises to petitioner and petitioner never challenged that remark;

3. During the colloquy, the trial judge expressly informed Mr. Johnson that even if promises had been made, they would be useless since the trial judge had not yet determined what the sentence would be;

4. At the actual sentencing, the petitioner, represented by counsel, never alleged that his attorney at trial had guaranteed him a maximum five year sentence;

5. At the PHCA hearing, the petitioner, again provided with counsel, when afforded the opportunity to adduce evidence on the issue of whether his counsel had guaranteed him a maximum five year sentence, refused to do so;

6. Petitioner failed to raise the issue of his attorney's alleged "guarantee" of a maximum sentence of five years in any court proceeding for some thirteen years; and

7. Petitioner is unable to point to any evidence of record that even remotely substantiates his allegation.

When viewed within the context of these salient points, we find ourselves in agreement with the PHCA's conclusion, reached after providing petitioner with a full and fair evidentiary hearing:

The defendant first contends that his guilty plea was unlawfully adduced and that it is therefore invalid. He bases this plea upon an allegation that he was promised a certain sentence in return for

his guilty plea and did not receive the promised sentence. The record is absolutely devoid of anything that would support the defendant's contention. Moreover, we must point out that at the evidentiary hearing before us the defendant chose not to testify on his own behalf and to rest upon the record.

*Commonwealth of Pennsylvania v. James Johnson,* Nos. 1208–1212 (Ct. of Common Pleas–Phil. Co. January 20, 1984) slip op. at 3.

■ We also reject as wholly without merit petitioner's claim that his trial counsel was ineffective for advising him to plead guilty to the indictment. The Supreme Court, in *McMann v. Richardson,* held that where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded in attorneys in criminal cases." 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). As the Supreme Court explained in *Tollett v. Henderson,* a defendant who pleads guilty upon advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann.*" 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).

During the colloquy, petitioner's counsel fully explained the reason for his advising petitioner to plead guilty:

Attorney: I explained to him the evidence that I felt the District Attorney would present, and I made an estimate, based on my experience, of the probable outcome of the presentation of that evidence to a jury. I did advise that he plead guilty and make a clean breast of things, and I think he did so voluntarily.

Court: That is your tactical and strategic conclusion upon your full assessment of this case and the evidence that has been or will be produced against him?

Attorney: Yes, sir.

Court: A knowledge of that evidence. Incidentally, how do you come by a knowledge of that evidence.

Attorney: My tactical decision was made on the basis of the evidence which I had knowledge that the District Attorney would present. I had the knowledge because Mr. Stevens, the Assistant District Attorney that handles the case, was very free in letting me look at the file that had been prepared in this case.

Court: So that you have thoroughly examined the District Attorney's file and know the evidence that will be presented against him; is that true?

Attorney: At this time I believe I know every item of evidence to which he would be entitled to admit and present to the jury.

N.T. 17–19. We note that the trial court did, in fact, hear testimony from fifteen witnesses that clearly established a factual basis for the guilty plea. We conclude, therefore, that petitioner's counsel's advice to plead guilty falls within the range of competence demanded in attorneys in criminal cases. Accordingly, we reject petitioner's second ground in support of habeas relief. *See Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *Siers v. Ryan,* 773 F.2d 37, 42 (3d Cir.1985).

■ Petitioner's third and final ground for habeas relief is that his counsel was ineffective for failing to pursue his appeal in the state courts. It is well established that a claim of ineffective assistance of counsel must be evaluated against the two-part test ennunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, petitioner must show that his "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694, 104 S.Ct. at 2068. However, the Supreme Court has held that there is no reason for a trial court deciding an ineffective assistance of counsel claim to approach the inquiry in the same order

of even to address both prongs of the test if the petitioner makes an insufficient showing of one:

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies ... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, this course should be followed.

Id. at 697, 104 S.Ct. at 2069.

In the instant case, having determined that there was no merit to petitioner's involuntary plea claim, the only ground open to him in the state appellate process, counsel's alleged ineffectiveness in pursuing that meritless claim, cannot pass the second prong of the *Strickland* test. *See Jones v. Barnes,* 463 U.S. 745, 750–754, 103 S.Ct. 3308, 3312–3314, 77 L.Ed.2d 987 (1983). Accordingly, we reject as wholly without merit, petitioner's third ground in support of his habeas petition.

For the reasons stated above, the Report and Recommendation of the Magistrate recommending that the petition for writ of habeas corpus be dismissed will be approved and adopted.